**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| CREATIVE PHOTOGRAPHERS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION FILE NO. |
| | ) |
| JULIE TORRES ART, LLC and JULIE | ) 1:22-cv-00655-JPB |
| TORRES, MAUNE CONTEMPORARY, LLC, | ) |
| AND INTERNATIONAL FINE ART DIRECT, | ) |
| LTD. | ) |
| | ) |
| Defendants. | ) |

_____

**<u>DEFENDANTS JULIE TORRES ART, LLC</u>**
**<u>& JULIE TORRES' REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

John M. Bowler
Georgia Bar No. 071770
john.bowler@troutman.com
Lindsay Mitchell Henner
Georgia Bar No. 272310
lindsay.henner@troutman.com
TROUTMAN PEPPER
HAMILTON SANDERS LLP
600 Peachtree Street, NE, Suite 3000
Atlanta, Georgia 30308-2216
Telephone: (404) 885-3000
Facsimile: (404) 885-3900

*ATTORNEYS FOR DEFENDANTS*
*JULIE TORRES ART, LLC & JULIE*
*TORRES*

Defendants Julie Torres Art, LLC ("Torres Art") and Julie Torres ("Torres"), (together, "Ms. Torres"), respectfully submit this reply in support of their motion to dismiss all counts of the First Amended Complaint ("Am. Compl.") filed by Plaintiff Creative Photographers, Inc. ("CPi").

### a. CPi's Opposition Brief Should be Disregarded

For all of the reasons set out in Ms. Torres' Motion to Disregard [Dkt. 35], the Court should decline to consider CPi's brief in opposition ("Opp. Br.") to this Motion to Dismiss under Local Rule 7.1(F). CPi's brief fails to comply with the margin, font, page limit, compliance certification, and request for leave to submit excess pages rules of this District and the Standing Order in this case. CPi's brief further flouts well-established law against introducing extrinsic evidence beyond the pleadings on a motion to dismiss by submitting at least sixteen new factual allegations and exhibits that do not appear in the Amended Complaint. The foregoing is to Ms. Torres' prejudice, in particular in this reply brief that is limited by local rule and law to fifteen pages and the substance of the pleadings themselves.

### b. CPI's Brief Cannot Remedy its Deficient Standing Pleading

CPi contends that Ms. Torres "take[s] liberties" with the grant language in the Agency Agreement, but that is mere projection. Ms. Torres reads the plain language of the Agency Agreement that CPi chose to incorporate by reference and attach to

its Amended Complaint. *Gen. Guar. Ins. Co. v. Parkerson*, 369 F.2d 821, 825 (5th Cir. 1969) ("This complaint is plagued not by what it lacks, but by what it contains. All of the paths to relief which the pleading suggests are blocked by the allegations and the attached documents themselves, without more."). Rather, it is CPi that imports into the Agency Agreement terms (like "exclusive license") that are entirely absent and asks the Court to make layer upon layer of inferences to find standing.

CPi does not contend that the Agency Agreement cannot be construed on a motion to dismiss, nor should it argue as such. The law in both Georgia and New York allows construction of a contract and, if unambiguous, analysis of its terms on a motion to dismiss. *See, e.g.*, *Ralls Corp. v. Huerfano River Wind, LLC*, 27 F. Supp. 3d 1303, 1321 (N.D. Ga. 2014); *Avion Systems, Inc. v. Thompson*, 293 Ga. App. 60, 62-63, 666 S.E.2d 464 (2008); *South Rd. Assocs., LLC v. IBM*, 826 N.E.2d 806, 809 (2005); *805 Third Ave. Co. v. M.W. Realty Associates*, 58 N.Y.2d 447, 451 (1983). The Agency Agreement is unambiguously <u>not</u> an "exclusive license", not sufficient to confer standing in the Northern District of Georgia, and in any event CPi has still failed to plead other necessary elements of standing under the auspices thereof.

### i.  The Agency Agreement is not an exclusive licensee.

When CPi argues the Agency Agreement conveys an "exclusive license" to photographs themselves rather than an exclusive right to act as an agent, it is

importing terms that do not exist in, and are contradicted by, the agreement itself. The plain language of the Agency Agreement is unambiguous in what it provides and does not provide. CPi recites language in the document (that, to be clear, does not reference an exclusive license) but then draws conclusions that simply do not follow. CPi certainly has not been conveyed all rights in the Asserted Image protected by the Copyright Act, and any right even arguably conveyed in the Agency Agreement is non-exclusive as confirmed by CPi's own pleadings.

The Agency Agreement unambiguously states that Afanador retained CPi as his "exclusive agent." CPi is an "agent," and it is the agency role that is "exclusive." Nothing in the Agency Agreement refers to an assignment of an "exclusive license" to CPi to exploit Copyright Act rights. The Agency Agreement is not even an agreement that CPi will act as Afanador's agent for all activity related to Afanador's copyrighted images covered by the Copyright Act. CPi is only arguably an agent to " sell, syndicate, license, market, or otherwise distribute…"

To be a "beneficial owner" with standing under the Copyright Act, CPi must be a "beneficial owner of an <u>exclusive right</u>" specifically enumerated in Section 106. 17 U.S.C. § 501 (emphasis added). "With all due respect to opposing counsel," despite CPi's *ipse dixit*, the Agency Agreement "grants" do not align with "all of the enumerated rights under Section 106," which for photography covers rights to

3

"reproduce", to "prepare derivative works", to "distribute copies…to the public", and to "display the copyrighted work publicly." There is no "syndication" right[1] or "marketing" right in Section 106, and the Agency Agreement does not reference reproductions, display, or derivatives.[2] At most, the Agency Agreement could overlap Section 106(3) governing the right "to distribute", which says distribution includes sale or other ownership transfer, rental, lease, or lending – i.e., outright ownership transfer and licensing. CPi does not hold an exclusive right to either.

As to an outright ownership transfer right, the Agency Agreement did not grant CPi that right because Afanador remains the owner of his images. CPi could no longer be an "agent" for Afanador as to an image that Afanador no longer owns. That leaves only licensing activity as a "distribution right" granted to CPi, but the

---

[1] CPi attempts to force-fit syndication under Section 106(5) governing "display" rights, but that is belied by CPi's own definition of the term. Read in its entirety (rather than Plaintiff's selective emphasis) CPi's definition agrees that syndication is a specific act of <u>selling to multiple different publications</u>. Even assuming acting as an agent for syndication included a display right, CPi would hold an "exclusive" right to display <u>in the context of syndication</u>.

[2] Although CPi would like to waive its hand over the distinction between these protected acts, they are distinct subsections of the statute. CPi also does not engage in these acts. CPi does not create reproductions like prints, it does not display photographs to the "public" at large such as in a gallery, and it does not make derivative artwork. Although CPi asks the Court to infer without factual or legal basis that a "marketing" right inherently includes a display right, so what? CPi was not designated as an exclusive agent to "display" images, so even under CPi's own argument it would hold another "exclusive" right to display <u>solely for the purposes of marketing the original image</u>.

right to license is <u>not exclusive</u> under the plain language of the Agency Agreement. Afanador is <u>only</u> restricted under the Agency Agreement from sale (necessary to preserve the validity of any transaction with which CPi assists) and syndication.

CPi claims that despite the plain language prohibiting Afanador only from sale and syndication, the Court should infer that Afanador is restricted from doing <u>every</u> activity for which CPi is the "exclusive agent" because that is the "nature of an exclusive license." Yet, this is not a "license" – it's an agent retention agreement. Serving as an "agent" with rights to authorize third party activity is fundamentally distinct from prohibiting the principle from acting himself. And an exclusive license does not have a blanket "nature" from which grants of rights can be inferred – it only has its precise terms. If Afanador were to be prohibited from licensing, marketing, or otherwise distributing, the Agency Agreement shows that the parties knew how to separately articulate those restrictions.[3] They did not do so. CPi also continues to plead and argue that Afanador retains the ability to license to third parties himself – a division of rights that cannot be "exclusive" for purposes of standing (*see infra* Section (a)(iii)).

---

[3] Applying a basic canon of contract construction, "syndicate" and "sell" are separate terms from "license" in the Agency Agreement and therefore each must have its own meaning. *See Estate of Pitts v. City of Atlanta*, 323 Ga. App. 70, 82 (2013); *Burlington Ins. Co. v NYC Tr. Auth.*, 29 N.Y.3d 313, 323 (2017).

### ii. There is no right to derivatives in the Agency Agreement.

CPi does not address, let alone rebut, that its claims in this case are for violations of the derivative work right in Section 106(2). CPi also does not address or distinguish the line of case law that says a derivative work right must be conveyed to CPi for CPi to have standing to bring such claims.[4] CPi's only rebuttal to the fact that the Agency Agreement makes no reference to a derivative work right is to assert that CPi can license the original (addressed above and not exclusive) and that "paragraph 4 of the Agreement…explicitly indicates that CPI can create derivative works." Neither point has merit.

Even if exclusive (which it is not here) the right to license an original photograph is not equivalent to a right to prepare derivative works,[5] and those rights are provided in distinct subsections of Section 106. Moreover, Paragraph 4, which

---

[4] *See, e.g.*, *Roberts v. Gordy*, 359 F. Supp. 3d 1231, 1240-41 (S.D. Fla. 2019) (rejecting standing to assert rights to prepare derivative works even where plaintiff was receiving related royalties in the original); *Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*, 747 Fed. Appx. 3, 6 (2d Cir. 2018) ("Because CAM lacks the exclusive right to exploit derivative works of Instrumental and Vocal, CAM lacks standing to bring suit against the defendants for copyright infringement."); *Fahmy v. Jay-Z*, 908 F.3d 383, 394 (9th Cir. 2018) (finding plaintiff did not hold the specific exclusive right at issue in the case—the right to prepare derivative works—so he lacked standing to sue for infringement caused by a derivative work).

[5] Nor is CPi in the business of licensing preparation of derivatives, which would make a grant of derivative rights nonsensical. CPi emphasizes in its very first sentence in the brief that it "distributes to media outlets and publications photographs of models and celebrities created by internationally renowned photographers."

CPi understandably did not quote in its brief, conveys no such derivative work right.

Paragraph 4 reads as follows:

> Retouching expenses of up to $350 per image will be covered by CPi. Retoucher may invoice CPi directly after delivery of images and CPi will make payments within 45 days of invoice. All images retouched will be made available to CPi for syndication.

This paragraph has nothing to do with derivative works or a grant of rights, let alone an exclusive right to create derivatives. It does not even say that CPi is entitled to request or prepare their own retouches, only that CPi will reimburse retouching expenses. In fact, by offering reimbursement and commanding that retouched images "be made available to CPi" it is clear that CPi is not the one preparing or originally responsible for creating and paying for retouched images. Regardless, retouched images are not "derivative works" under the Copyright Act.[6]

CPi must plead and prove infringement of the precise Section 106 right it holds, not other rights or interests. *Original Appalachian Artworks, Inc. v. Schlaifer Nance & Co.*, 679 F. Supp. 1564, 1571 (N.D. Ga. 1987). To the extent CPi asserts (but has not argued) that the claims rely on its exclusive right to "copy, publicly

---

[6] *See e.g.*, *Harness v. Rossler*, NO. 08-CV-0988-P, 2009 U.S. Dist. LEXIS 142701, at *10 (N.D. Tx. Mar. 31, 2009) (noting lack of authority "to show that a photograph enhanced by the producer of that photograph creates a separate and distinct work. The Court is unconvinced that [such] enhancements augment the original images enough to represent an original work of authorship.").

display, and distribute" (Am. Compl. ¶ 1),[7] the Agency Agreement does not convey exclusive rights in those acts to CPi and they cannot form the basis of standing. In reality, and uncontested by CPi, CPi's claims are grounded in the derivative work right. Am. Compl. ¶¶ 12, 13. But the Agency Agreement specifically omits derivative work rights from whatever it is that may be conveyed thereunder.

### iii. CPi relies on non-binding Ninth Circuit law that directly contradicts law in this Court.

In a last ditch effort to save its claims, CPi offers Ninth Circuit case law to claim that the Agency Agreement is more than a right to authorize, and in doing so CPi rejects Northern District of Georgia law that is directly on point despite CPi's insistence otherwise. Just like in *Original Appalachian*, CPi is retained as an exclusive "agent" to authorize third parties to exploit works through licensing. *Original Appalachian*, 679 F. Supp. at 1571 ("SN&C argues that its exclusive rights to license others to use the copyright at issue is one of the 'bundle of rights' protected by section 106."). That is not enough.

CPi asserts that the plaintiff in *Original Appalachian* did not have an agreement "that explicitly and exclusively conveyed rights under Section 106 of the Copyright Act" but <u>neither does CPi</u>. CPi cannot and does not explain how its right

---

[7] Presumably referencing Copyright Act Section 106(1) to reproduce copies, Section 106(3) to distribute copies, and Section 106(5) to display the work publicly.

to act as an agent granting licenses is any different from the exclusive right to act as

an agent granting licenses at issue in *Original Appalachian*. The Court in *Original*

*Appalachian* agreed that contracts expressly and directly conveying rights under

Section 106 conferred standing. But such conveyances are dramatically different

than CPi's Agency Agreement, and provide that the copyright owner:

> does hereby sell, assign, transfer and set over to [the licensee] the entire
> right, title and interest to any copyrights on the [subject] designs ... for a
> term of three (3) years … at the conclusion of which, unless renewed for
> additional terms by mutual consent, Hasbro agrees to assign back to
> Takara, free of any charge, all of the rights assigned herein….

*Wales Indus. v. Hasbro Bradley, Inc.*, 612 F. Supp. 510, 514 (S.D.N.Y. 1985). *See*

*also Pro. LED Lighting, Ltd. v. AAdyn Tech., LLC*, 88 F. Supp. 3d 1356, 1370 (S.D.

Fla. 2015) (devoid of an actual assignment provision as in the instant case).

    *Original Appalachian* is clear that the right to serve as an exclusive agent is

not equivalent to being an exclusive licensee, and an exclusive agent lacks standing

regardless of whether their agency authority extends to rights covered under the

Copyright Act. The agreement at issue in *Original Appalachian* itself invoked rights

expressly listed in Section 106, such as rights "to prepare and reproduce" the original

work, to issue licenses, and to license "designs derived" from the original work.

*Original Appalachian*, 679 F. Supp. at 1568. The standing problem, as identically

here, was that the *Original Appalachian* plaintiff was only acting as an agent

permitting others to perform protected activity on the owner's behalf.

Ms. Torres' motion did not cite the *Minden* and *DRK* cases from the Ninth Circuit that CPi relies on because they are not binding on this Court and contrary to existing law here. Ms. Torres is aware of no Court in the Eleventh Circuit that has cited *Minden*, let alone relied on its analysis. Even Ninth Circuit district courts have questioned the logic of *Minden.* One such Court has remarked that allowing an agent to have standing even though they divide rights with an owner is contrary to the Copyright Act exclusivity requirement, earlier Ninth Circuit law, and the leading treatises which conclude that when a licensee holds a <u>truly</u> "exclusive" right (unlike in this case) the owner can no longer enforce that right. *Fathers & Daughters Nev., LLC v. Lingfu Zhang*, 284 F. Supp. 3d 1160, 1168 (D. Or. 2018). *See also Davis v. Blige*, 505 F.3d 90, 101 (2d Cir. 2007) (an exclusive license destroys the value of a copyright to the copyright owners).

In any event, *Minden* is distinguishable. In *Minden*, the agreement at issue appointed Minden as the "exclusive agent and representative with respect to Licensing," but that was not all. The agreement "also confer[red] upon Minden 'the unrestricted, exclusive right to distribute, License, and / or exploit the Images . . . without seeking special permission to do so.'" *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1000 (9th Cir. 2015). Here, CPi and Afanador's Agency

Agreement attempts to do the former (appoint an exclusive agent for certain activity) but does not do the latter (expressly confer a direct and unfettered right to exploit).

The agreement in *Minden* also provided an express grant back to the photographer of certain rights to use photos rather than identifying a few things the photographer agrees not to do like in the Agency Agreement here. The grant of rights back to the photographer in *Minden* is consistent with the idea that Minden held ownership-like rights that the photographer needed permission to use. The reverse is true here, where CPi gets limited permissions to act as an agent from Afanador who continues to hold by far the bulk of the rights.

The *DRK* case from the Ninth Circuit fares no better here, cited in only a couple of district court cases on issues unrelated to agent exclusivity.[8] In fact, *DRK* supports dismissal in the precise circumstances here, noting "[n]either the statutory text nor the analysis in *Minden* suggests that, having been given the right 'to authorize' others to exercise the rights of copyright holders, a nonexclusive licensee becomes a legal owner with standing to sue." *DRK Photo v. McGraw-Hill Global Educ. Holdings, LLC*, 870 F.3d 978, 985 (9th Cir. 2017).

---

[8] *See Nealy v. Atl. Recording Corp.*, 2021 U.S. Dist. LEXIS 105115, at *5 (S.D. Fla. June 4, 2021) (citing *DRK* on the ownership burden of proof); *Walsh v. Chubb*, 2020 U.S. Dist. LEXIS 247662, at *22, n.9 (N.D. Ala. Oct. 21, 2020) (citing district court level opinion on issues related to good cause standard for amendment).

### iv. CPi fails to plead other necessary facts to show that the Agent Agreement creates its standing to bring the instant claims.

Notwithstanding all of the foregoing independently dispositive points, CPi fails to plead basic elements needed to confer standing under the Agency Agreement that it says governs the claims here. CPi perhaps implies that the Asserted Image was an "Accepted Image" under the Agency Agreement, but it does not say when rights were acquired relative to the alleged infringement. Rights associated with an "Accepted Image" – even if ownership rights, which they are not – would only be effective as of the date that Afanador presents and CPi accepts the image. CPi does not plead that the Asserted Image became an "Accepted Image" prior to the alleged infringement, and the Agency Agreement does not confer a right to sue for past infringement, therefore CPi would still lack standing to bring these claims. *Glennon v. Rosenblum*, 325 F. Supp. 3d 1255, 1264 (N.D. Ala. 2018).

### c. CPI's Brief Does Not Remedy its Deficient Infringement Pleading

Aside from reciting law, CPi's opposition to the dispositive fair use defense improperly relies on a plethora of statements without citation that are absent from the Amended Complaint. Regardless, the conclusory allegations that <u>are</u> in the Amended Complaint alleging infringement are all but irrelevant[9] to the fair use issue

---

[9] Although allegations should be accepted as true, "mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).

before the Court in this motion. CPi agrees the "only two pieces of evidence needed to decide the question of fair use" are "the original version" and the allegedly infringing version. Opp. Br. at 23 (citing *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012)). Yet, the majority of CPi's argument relates to what Afanador and Ms. Torres think about their respective works rather than what the works themselves communicate. The law is clear that Ms. Torres' "intent is irrelevant" in the context of copyright infringement, and Afanador's intent is "irrelevant in determining the scope of [his] copyright protection[.]" *Atl. Recording Corp. v. Spinrilla, LLC*, 506 F. Supp. 3d 1294, 1306 (N.D. Ga. 2020); *Pohl v. MH Sub I, LLC*, 478 F. Supp. 3d 1232, 1239 (N.D. Fla. 2020).

Calling Ms. Torres' changes "simple", "easy", and "uncontroversial" (i) does not make them so, and (ii) is contradicted by the Accused Works visually and CPi's own arguments that follow. For example, CPi argues that if Ms. Torres wanted to "fundamentally alter[ the] Work" she could have: (i) cropped the work; (ii) distorted the perspective; (iii) added elements that changed the work from dignified; (iv) altered her robe; or (v) changed the stately image into something less so. The

Accused Works do <u>all of these things</u>. For example:



Justice Ginsburg's robe is significantly altered to a wild-colored animal print, which is neither "stately" or particularly "dignified" for a Justice of the Supreme Court.

The Asserted Image is significantly distorted and no longer resembles a photograph at all, but instead a cartoonish style resembling a drawing or painting.

The Asserted Image is cropped to omit things like portions of her robe and seating, the entire "stoic" grey background, and detailing in the folds of her robe.

The Accused Work offers an entirely different perspective on Justice Ginsburg than the Asserted Work, as cluttered, pieced together, and loud, rather than a scholarly traditional portrait of a member of the bench.

There can be no serious debate that the Accused Works convey a "new meaning or message" entirely separate from its source material, as CPi argues is required for fair use. What CPi calls changes to the "least important and least impactful parts" of the Asserted Work are anything but, as they are all dramatic changes to what CPi claims are Afanador's signature style. That is dispositive on the issue of fair use at least because, as CPi concedes, "Afanador has no monopoly on Ruth Bader Ginsburg's face or appearance[.]" Opp. Br. p. 26.

14

Finally, CPi has no right to authorize derivatives (*see supra* Section (b)(ii)), so its market for the Asserted Work cannot be harmed, let alone usurped, by an art piece like the Accused Works as a matter of law. Even if "derivative works" were a reasonable market for a traditional portrait meant for media syndication, the derivates market is not a market to which CPi has access on behalf of Afanador under the Agency Agreement's terms. CPi also doubles down on its role in the marketplace as a distributor of original photographs to various media outlets and publications. Opp. Br. p. 6. Arguing that CPi cannot suffer harm in its market as a result of the Accused Works is not burden shifting that requires CPi to show actual harm to defeat fair use, it is a citation to CPi's own explanation of its relevant markets.

### d. CPI Should Not be Permitted to Amend

CPi should not be permitted leave to amend at least because it has no standing, has failed to remedy pleading deficiencies despite filing an amended complaint, and has no additional facts that would create standing or state a valid claim. *See, e.g.*, *Duran v. Wells Fargo Bank, N.A.*, No. 09-20411-CIV, 2009 WL 10668548, at *2 (S.D. Fla. Oct. 6, 2009) (dismissing claims with prejudice because the plaintiff failed to plead facts to show their case even after being permitted to file an amended complaint). CPi has pleaded its best case, and its briefing shows that even well beyond the pleadings, CPi's claims still fail.

Respectfully submitted this 4th day of May 2022.

*/s/ Lindsay Mitchell Henner*
John M. Bowler
Georgia Bar No. 071770
john.bowler@troutman.com
Lindsay Mitchell Henner
Georgia Bar No. 272310
lindsay.henner@troutman.com
TROUTMAN PEPPER
HAMILTON SANDERS LLP
600 Peachtree Street, NE, Suite 3000
Atlanta, Georgia 30308-2216
Telephone: (404) 885-3000
Facsimile: (404) 885-3900

*ATTORNEYS FOR DEFENDANTS*
*JULIE TORRES ART, LLC & JULIE*
*TORRES*

## CERTIFICATION OF COMPLIANCE WITH LR 5.1

Counsel for Defendants Julie Torres Art, LLC and Julie Torres certifies that

this paper was prepared with Times New Roman 14-point font.

*/s/ Lindsay Mitchell Henner*
Lindsay Mitchell Henner

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF System which will automatically send email notification of such filing to all attorneys of record.

This 4th day of May 2022.

*/s/ Lindsay Mitchell Henner*
Lindsay Mitchell Henner

17